**EXHIBIT A**

**State-Court Process, Pleadings, And Orders Served On Defendant Yonel Devico**

**FOX ROTHSCHILD LLP**
Formed in the Commonwealth of Pennsylvania
By: Barry J. Muller, Esq. - NJ Attorney ID No. 016911998
Princeton Pike Corporate Center
997 Lenox Drive, Building 3
Lawrenceville, New Jersey 08648-2311
(609) 896-3600
Attorneys for Plaintiffs,
    **Debra S. Minuto & MV Realty Group LLC**

|  |  |  |
|---|---|---|
|  |  | SUPERIOR COURT OF NEW JERSEY |
|  |  | BERGEN COUNTY: LAW DIVISION |
|  |  |  |
|  |  | Docket No.: BER-L- |

| | | |
|---|---|---|
| ——————————————— X | | |
| | : | |
| **DEBRA S. MINUTO and MV REALTY** | : | |
| **GROUP LLC,** | : | |
| | : | |
| Plaintiffs, | : | <u>Civil Action</u> |
| | : | |
| v. | : | |
| | : | |
| **JONATHAN KAIDEN; PARK LENDING,** | : | **COMPLAINT & JURY DEMAND** |
| **LLC; PARK LENDING II LLC; YONEL** | : | |
| **DEVICO; TRINITY FINANCIAL** | : | |
| **ENTERPRISES, LLC d/b/a TRINITY** | : | |
| **MORTGAGE, LLC; TRINT NIXON;** | : | |
| **JOHN DOE LAWYER (a fictitious attorney** | : | |
| **whose identity is not yet known), JILLIAN** | : | |
| **MICHAELS, MIKHAIL MUDRIK, and** | : | |
| **THE AGENCY FLORIDA, LLC,** | : | |
| | : | |
| Defendants. | : | |
| ——————————————— X | | |

    Plaintiffs, Debra S. Minuto, ("Debra") and MV Realty Group LLC ("MVR"), by and

through their attorneys, Fox Rothschild, LLP, by way of Complaint against Defendants, hereby

allege and say:

139575916.1

## **PARTIES**

1. Debra is an individual residing in the County of Bergen at 11 Chestnut Ridge Road, Saddle River, New Jersey.

2. MVR is a limited liability company formed under the laws of the State of Florida with an address at 11 Chestnut Ridge Road, Saddle River, New Jersey.

3. Debra is and was the sole member of MVR.

4. Defendant, Jonathan Kaiden ("Kaiden"), is an individual with an address at 3656 Carlton Place, Boca Raton, Florida.

5. Kaiden, also known as "Jon, J.D.", previously served as a Senior Managing Director of New York Capital Corp. Mr. Kaiden served as Principal and Founding Member at Sopris Capital Associates, LLC and served as its President.

6. Before joining Sopris Capital in early 2002, Kaiden spent several years as an investment banker and securities attorney focusing on corporate finance and mergers and acquisitions.

7. Kaiden is currently the Chairman and Managing Partner of Baleon Capital.

8. Kaiden is a sophisticated lender with many years of private equity and financial transaction experience.

9. Upon information and belief, Kaiden holds no FINRA broker licenses or NMLS licenses.

10. Defendant Park Lending, LLC ("Park I"), is a limited liability company formed under the laws of the State of Delaware.

11. Upon information and belief, Park I was formed on March 9, 2022.

12.     Defendant, Park Lending II, LLC, ("Park II"), is a limited liability company formed under the laws of the State of Delaware.

13.     Upon information and belief, Park II was formed on June 8, 2022.

14.     Upon information and belief, Park I and Park II are mere alter egos and instrumentalities of Kaiden, sharing common ownership and employees.

15.     Kaiden exercised complete domination and control over the Park I and Park II sham entities with respect to the transactions at issue herein.

16.     Kaiden's domination and control was employed by him to commit a fraud or wrong that resulted in injury to Plaintiffs.

17.     There was such a unity of interest and control between Kaiden and the Park I and Park II sham entities that they cannot be said or deemed as a matter of law to be separate entities.

18.     Defendant, Yonel Devico ("Devico"), is an individual who, upon information and belief, resides in the State of Florida.

19.     Kaiden and Devico participated directly in, and/or had sufficient involvement with, the commission of the tortious, fraudulent and willful misconduct alleged herein.

20.     Defendant, Trinity Financial Enterprises, LLC d/b/a Trinity Mortgage, LLC ("Trinity"), is a limited liability company formed under the laws of the State of Florida.

21.     Defendant, Trint Nixon ("Nixon"), is an agent, employee, member, and/or representative of Trinity.

22.     Upon information and belief, Nixon holds no FINRA broker licenses or NMLS licenses.

23.     Upon information and belief, Nixon and Kaiden are friends and are regularly involved in financial transactions.

139575916.1                                        3

24.     Defendant John Doe Lawyer is a fictious lawyer whose identity is currently unknown.

25.     Defendant, Jillian Michaels ("Michaels"), is an American personal trainer, businesswoman, author, and television personality with an address at 3570 Matheson Avenue, Miami, Florida 33132.

26.     Defendant, Mikhail Mudrik ("Mudrik"), is a real estate agent licensed under the laws of the State of Florida.

27.     Defendant, The Agency Florida, LLC ("The Agency"), is a Florida limited liability company with an address at 9564 Harding Avenue, Surfside, Florida 33154.

28.     Pursuant to Rule 4:3-1, venue is properly laid in this Court as Bergen is the county in which the initial cause of action arose and in which Plaintiffs reside at the time of commencement.

**ALLEGATIONS COMMON TO ALL COUNTS**

29.     Plaintiffs repeat and incorporate each and every allegation contained herein as if more fully set forth at length.

30.     On October 20, 2021, Debra entered into a contract to purchase the real property located at 15701 Collins Avenue, Suite 4901, Sunny Isles Beach FL 33160 (the "Property") for $4,650,000.

31.     Debra retained Trinity and Nixon as mortgage brokers to obtain financing for the purchase of the Property.

32.     With Trinity and Nixon's knowledge, Debra and her husband, Anthony (collectively, the "Minutos"), negotiated an agreement with Michaels whereby Michaels agreed loan the Minutos $800,000 towards the purchase Property.

139575916.1                                                4

33.     The terms of the agreement, as understood by the Minutos, were memorialized within a written Promissory Note and Addendum (the "Michaels Note"), which was signed by the Minutos on December 16, 2021.

34.     Pursuant to the Michaels Note, Michaels agreed to loan the Minutos the sum of $800,000 for the purchase of the Property.

35.     The Minutos agreed to pay Michaels the sum of $875,000 within 45 days.  If they failed to do so, the Minutos agreed to provide Michaels with a mortgage on the Property for an amount no greater than $875,000.

36.     Michaels wired $800,000 to the Minutos on December 16, 2021.

37.     The Minutos advised and disclosed to Trinity and Nixon the Michaels Note.

38.     Trinity and Nixon obtained additional financing for the purchase of the Property from Kaiden.

39.     Kaiden agreed to provide Debra with a one year loan through a Commercial Property Note in the principal amount of $3,487,500, at 8% per annum interest, with monthly payments in the amount of interest only (the "Kaiden Note").

40.     To create the guise that it was a "commercial" transaction, Kaiden insisted the transaction be facilitated through MVR.

41.     Trinity and Nixon formed MVR on behalf of Debra.

42.     The Kaiden Note was to be secured by a first mortgage on the Property (the "Kaiden Mortgage").

43.     In early January 2022, via telephone conversations, Nixon advised the Minutos that he made Kaiden aware of the Michaels Note, and Kaiden had no objection.

44.    Kaiden never objected to the Michaels Note, and, upon information and belief, he made the Kaiden Note with full knowledge and information of the Michaels Note and the Minutos' obligations thereunder.

45.    The Minutos advised Michaels of the prospective Kaiden transaction and she had no objection as she was fully aware that her loan proceeds were being used to purchase the Property.

46.    Kaiden never advised Plaintiffs that their performance under the Michaels Note would trigger a default under the Kaiden Note.

47.    Kaiden knew full-well that Michaels had contributed $800,000 towards the purchase of the Property and could assert her right to an encumbrance against the Property.

48.    The closing of the Kaiden Note occurred on January 18, 2022.

49.    Kaiden sent his agents and / or representatives to the Minutos' home in New Jersey to obtain Debra's signatures on a the Kaiden Note, the Kaiden Mortgage, a Personal Guaranty, and numerous other loan documents (collectively, the "Kaiden Loan Documents").

50.    All of the Kaiden Loan Documents were signed and witnessed in the State of New Jersey in the Minutos' residence in Bergen County, New Jersey.

51.    Debra was advised by Nixon that she did not need legal representation for the transaction.

52.    Subsequent to the closing, Trinity, Nixon, and/or Kaiden retained John Doe Lawyer, a Florida attorney, to review all the Kaiden Loan Documents (and presumably the Michaels Note) and provide an opinion letter as to the propriety of the transaction on behalf of Plaintiffs (the "Opinion Letter").

53.    To this day, Plaintiffs were never provided with a copy of the Opinion Letter.

139575916.1                                          6

54.     After the closing, MVR proceeded to make monthly interest-only payments to Kaiden pursuant to the Kaiden Note.

55.     On February 14, 2022, Michaels sent communications into the State of New Jersey demanding the immediate repayment of the money she loaned for the purchase of the Property under the Michaels Note.

56.     In doing so, Michaels threatened the Minutos with unjustified and frivolous legal action, along with a *lis pendens* asserting a priority lien on the Property and, incredibly, to report the whole matter to criminal authorities.

57.     Pursuant to the Michaels Note, the Minutos agreed to provide Michaels with the precise remedy she bargained for (and which Kaiden knew about from the outset): a second mortgage on the Property in an amount no greater than $875,000 (the "Michaels Second Mortgage"), which was recorded on April 1, 2022.

58.     The Michaels Second Mortgage would have no legal impact, impairment, or detriment to the Kaiden Loan or Kaiden's ability to collect from the Property in the event the Plaintiffs defaulted.

59.     The Minutos assured Michaels that her loan and interest would be paid by no later than a year, simultaneous with the scheduled payoff of the Kaiden Note.

60.     But Michaels refused to wait and demanded the Property be immediately marketed and sold so she could obtain immediate repayment of her loan proceeds, despite the fact that she was going to be paid an additional $75,000 in one year interest (approximately, 9.4% per annum).

61.     When Plaintiffs refused to capitulate, upon information and belief, in April or early May 2022, Michaels, either directly or through her agents / representatives, notified Kaiden

139575916.1                                    7

of the recording of the Michaels Second Mortgage so as to induce Kaiden to declare a default under the Kaiden Note.

62.     Michaels conspired with Kaiden to trigger a false default under the Kaiden Note, to give Kaiden the option to accelerate the Kaiden Note and impose an onerous default rate of interest at 25%.

63.     Pursuant to the Kaiden Note, Kaiden retained the option to accelerate the amount due and impose an onerous default rate of interest at 25% in the event of a breach or default in any covenants, agreements, or provisions in the Kaiden Note or Mortgage.

64.     The Kaiden Mortgage contained a "Due on Sale Clause" which, according to Kaiden, prohibited MVR from selling, conveying, transferring, suffering any type of change in title or ownership, leasing, assigning or further encumbering any interest in any part of the Property without prior written consent of Kaiden, and that such encumbrance made without Kaiden's prior written consent shall be null and void and constitute a default.

65.     The Michaels Second Mortgage was not a "further" encumbrance of the Property as the Michaels Note was disclosed to Kaiden, executed before the Kaiden Note, and Kaiden was well-aware of and consented to the Michaels Note, and never objected to it prior to the transaction with Plaintiffs.

66.     Both Michaels and Kaiden stood to benefit from the scheme:  Kaiden could putatively charge an onerous default rate of interest at 25% by declaring the Kaiden Note in default, and Michaels believed the imposition of the onerous default interest rate would force the Minutos to sell the Property quicker, resulting in a quicker payoff of her loan and interest.

67.     But despite Kaiden's knowledge of the Michaels Second Mortgage, he never objected to the recording of the Michaels Second Mortgage.

139575916.1                                            8

68. In fact, on May 10, 2022, Kaiden's employee, and Park I and/or Park II's employee / manager, Devico, specifically advised Plaintiffs' counsel in New Jersey that he had a "request" with respect to the Michaels Second Mortgage (not a default or election to accelerate).

69. Subsequently, Plaintiffs received in New Jersey a letter dated May 12, 2022 from Kaiden's Servicing Agent (the "Kaiden Notice of Default").

70. Though the Servicing Agent, Kaiden acknowledged that the Loan was governed by the Dodd-Frank Wall Street Reform and Consumer Protection Act (the "Dodd-Frank Act"), as Debra was the true borrower, which was designed to protect consumers against abusive financial services practices.

71. In the Kaiden Notice of Default, Kaiden advised that two monthly payments had been missed:  April and May 2022.

72. In the Kaiden Notice of Default, Kaiden confirmed that the only amounts due as of May 12, 2022 under the Kaiden Note were the missed monthly payments for April and May, 2022, along with default interest for those two months.

73. The Kaiden Notice of Default confirmed that Plaintiffs' payment of the unpaid monthly sums would bring the Kaiden Note "current".

74. However, MVR had in fact made the timely monthly payments to Kaiden for April and May, 2022.

75. By letter dated May 19, 2022, Plaintiffs provided Kaiden, through his Servicing Agent, with proof the April and May, 2022 monthly payments had been made.

76. On May 23, 2022, Plaintiffs' counsel contacted Kaiden's Servicing Agent to inquire about the Kaiden Notice of Default.

139575916.1                                                      9

77.     Kaiden's Servicing Agent never disclosed that: (i) the Kaiden Note was in default as a result of the recording of the Michaels Second Mortgage; or (ii) Kaiden had opted to accelerate the Kaiden Note and impose default interest.

78.     On May 31, 2022, Plaintiffs' counsel contacted Devico to inquire about the Kaiden Notice of Default.

79.     Devico never disclosed that: (i) the Kaiden Note was in default as a result of the recording of the Michaels Second Mortgage; or (ii) Kaiden had elected to accelerate the Kaiden Note and impose default interest.

80.     To the contrary, Devico acknowledged that the April and May monthly payments had been made, *and instructed Plaintiffs' counsel to have the June 2022 monthly payment made in the same manner*.

81.     Plaintiffs, through counsel, reasonably relied upon the omissions and statements of Kaiden, through his Servicing Agent and Devico, and believed that all monthly payments had been made to date, and the Kaiden Note remained current.

82.     Despite having actual knowledge of the Michaels Second Mortgage, and despite prior email and verbal correspondence with Plaintiffs' counsel, Kaiden never notified Plaintiffs in the Kaiden Notice of Default or in any other manner that he considered the recording of the Michaels Second Mortgage a default under the Kaiden Loan, or that he had exercised his option to accelerate the loan.

83.     To the contrary, Plaintiffs continued to make the monthly payments under the Kaiden Loan to Kaiden, which he accepted, saying nothing about any default related to the Michaels Second Mortgage or acceleration of the Kaiden Note.

84.     In an effort to "whitewash" the numerous wrongful acts and fraud associated with the Kaiden Note, Kaiden effectuated two assignments of the loan documents to two related entities: Park I and Park II.

85.     Upon information and belief, Park I and Park II are alter egos and mere instrumentalities of Kaiden.  Thus, Kaiden, Park I, and Park II shall be collectively referred to as "Kaiden".

86.     On July 18, 2022, Kaiden caused Park II to file a foreclosure action against Plaintiffs (the "Foreclosure Action").

87.     The sole ground for the Foreclosure Action was the recording of the Michaels Second Mortgage against the Property.

88.     In the Foreclosure Action, Kaiden, through his alter ego, Park II, claimed that, contrary to the information he conveyed to Plaintiffs under the Dodd-Frank Act in the Kaiden Notice of Default, and contrary to the communications from his agents, servants, and/or employees, including Devico, the Kaiden Note had been accelerated on April 1, 2022, and Plaintiffs now owe interest under the onerous default rate of 25% from April 1, 2022 through the present.

89.     Kaiden, through his alter ego, Park II, alleged in the Foreclosure Action that Debra breached the terms of the Guaranty by failing to pay the accelerated Kaiden Loan on April 1, 2022, despite representing to Plaintiffs that no such accelerated payment was owed as of May 31, 2022.

90.     Kaiden was aware all along of the Minutos' obligation to Michaels prior to the Kaiden Loan transaction.

91.     Kaiden had actual knowledge of the recording of Michaels Second Mortgage in early May 2022 prior to sending Plaintiffs the Kaiden Notice of Default.  Yet, he said nothing and, to the contrary, represented that Plaintiffs would bring the Kaiden Loan "current" by making the April and May 2022 payments (which had already been made), and instructing Plaintiff to make the June monthly payment in the same manner as the prior payments.

92.     The Foreclosure Action was Plaintiffs' first notice that Kaiden had considered the Michaels Second Mortgage a default under the Kaiden Note and the first notice that Kaiden had elected to accelerate the Kaiden Note and impose default interest.

93.     As a result of the Kaiden Foreclosure Action, Plaintiffs have been forced to prematurely sell the Property (before maturity of the Kaiden Note) for less than its fair market value, and at a loss.

94.     Kaiden, Park I, and Park II put the proverbial "gun to the heads" of Plaintiffs by refusing to release the lien on the Property unless Plaintiffs paid the onerous default rate of 25% retroactively from April 1, 2022 through the present, to enable Plaintiffs to clear title to transfer the Property.

95.     Thus, Plaintiffs were forced to pay the Kaiden Note in full, plus additional sums not owed, under protest.

96.     On October 20, 2022, Park II provided a payoff letter to MVR representing the amount of money that needed to be remitted in order to pay the Kaiden Note in full (the "Kaiden Payoff Letter").

97.     MVR remitted all of the funds requested within the Kaiden Payoff Letter.  In fact, MVR overpaid by $7,265.64.

139575916.1                                          12

98. The Kaiden Mortgage, by operation of law, is now null and void (MVR having paid the Kaiden Note in full).

## COUNT ONE

### (Fraud In The Inducement / Equitable Fraud)

99. Plaintiffs repeat and incorporate each and every allegation contained herein as if more fully set forth at length.

100. Kaiden made the Kaiden Note to Plaintiff with full knowledge and information of the Michaels Note.

101. Kaiden never advised Plaintiffs, through their mortgage broker, Nixon and Trinity, that their performance under the Michaels Note would trigger a default under the Kaiden Note.

102. In early January 2022, via telephone conversations, Nixon advised the Minutos that he made Kaiden aware of the Michaels Note, and Kaiden had no objection.

103. Kaiden never objected to the Michaels Note, and, upon information and belief, he made the Kaiden Note with full knowledge and information of the Michaels Note and the Minutos' obligations thereunder.

104. Kaiden never advised Plaintiffs that their performance under the Michaels Note would trigger a default under the Kaiden Note.

105. Kaiden knew full-well that Michaels had contributed $800,000 towards the purchase of the Property and could assert her right to a purchase money mortgage on the Property.

106. Kaiden concealed his position so as to induce Plaintiffs to enter into the Kaiden Note, which was not compatible with Plaintiffs' existing needs, so as to profit from Plaintiffs and

139575916.1                                        13

eventually charge the interest at the onerous default rate of 25% and suck equity out of the Property.

107. Plaintiffs relied upon Kaiden's representations and omission, as communicated to their mortgage broker, Nixon and Trinity, and entered into the Kaiden Note.

108. Kaiden's representations and omission were material to the transaction.

109. Plaintiffs' reliance was reasonable, particularly since the Minutos were advised by Nixon and Trinity that Kaiden was aware of and consented to the Michaels Note.

110. Had Kaiden been truthful and honest and revealed to Plaintiffs that the Minutos' performance under the Michaels Note would result in an immediate default and acceleration of the Kaiden Note, Debra would have secured alternate financing for the purchase of the Property.

111. As a result of Kaiden's fraudulent inducement, Plaintiffs have been substantially damaged.

**WHEREFORE**, Plaintiffs demand judgment against Kaiden for damages; rescission; punitive damages; attorneys' fees and costs; and such other and further relief as the Court shall deem just and equitable.

## COUNT TWO

### (Predatory Lending)

112. Plaintiffs repeat and incorporate each and every allegation contained herein as if more fully set forth at length.

113. Predatory lending has been defined as a mismatch between the needs and capacity of the borrower. In essence, the loan does not fit the borrower.

114. At all relevant times Plaintiffs did not possess specialized or sophisticated knowledge regarding commercial loans, mortgages, or promissory notes.

115. Plaintiffs relied on Defendants' expertise and industry knowledge to advise them on the suitability of the Kaiden Note in light of the facts and circumstances that existed at the time, including the terms and provisions of the Michaels Note.

116. Plaintiffs relied on representations made in early January 2022 by Nixon that Kaiden had knowledge of and consented to all the terms and provisions of the Michaels Note.

117. Defendants, either through direct contact with the Plaintiffs or through the processing of Plaintiffs' loan application, engaged in business practices meant to deceive Plaintiffs for their own benefit.

118. Defendants engaged in misleading business practices involving Plaintiffs.

119. Debra is a "person" as defined by N.J.S.A. 56:8-l(d).

120. Defendants are "persons" as defined by N.J.S.A. 56:8-l(d).

121. Kaiden admits the Kaiden Note was a loan subject to the Dodd-Frank Act and, thus, furnished Debra with consumer credit, which is merchandise as defined by N.J.S.A. 56:8-1(c) and applicable case law.

122. To create the guise that it was a "commercial" transaction, Kaiden insisted the transaction be facilitated through MVR.

123. Trinity and Nixon formed MVR on behalf of Debra.

124. Plaintiffs relied on the expertise and industry knowledge of Kaiden, Trinity, and Nixon to advise them on the suitability of the Kaiden Note in light of the facts and circumstances that existed at the time, including the terms and provisions of the Michaels Note.

125. Defendants used unconscionable commercial practices, deception, fraud, false pretense, false promises, misrepresentations, and the knowing concealment, suppression, and

139575916.1

15

omission of material facts to induce Plaintiffs to enter into the Kaiden Note so they could all profit handsomely off of Plaintiffs and their equity in the Property.

126. Based upon the facts set forth herein, Defendants committed acts of consumer fraud upon Debra in violation of New Jersey law.

127. Debra suffered ascertainable losses including but not limited to (i) interest at the onerous default rate of 25%, and (ii) being forced to sell the Property below fair market value at a loss.

128. Debra is entitled to treble damages, attorneys' fees, and costs for these acts of consumer fraud.

**WHEREFORE**, Debra demands judgment against Kaiden, Trinity, and Nixon, jointly and severally, for damages; punitive damages; attorneys' fees and costs; rescission; treble damages; and such other and further relief as the Court shall deem just and equitable.

## COUNT THREE

### (Legal Fraud)

129. Plaintiffs repeat and incorporate each and every allegation contained herein as if more fully set forth at length.

130. On May 10, 2022, Kaiden's employee, and Park I and/or Park II's employee / manager, Devico, specifically advised Plaintiffs' counsel in writing, in the State of New Jersey, that he had a "request" with respect to the Michaels Second Mortgage, but never followed-up.

131. Subsequently, Plaintiffs received Kaiden Notice of Default.

132. Through the Servicing Agent, Kaiden acknowledged that the Loan was governed by the Dodd-Frank Act, as Debra was the true borrower, which was designed to protect consumers against abusive financial services practices.

139575916.1                                                    16

133. In the Kaiden Notice of Default, Kaiden advised that two monthly payments had been missed: April and May 2022.

134. In the Kaiden Notice of Default, Kaiden confirmed that the only amounts due at that time were the missed monthly payments for April and May, 2022, along with default interest for those two months, and Plaintiffs' payment of those monthly sums would bring the Kaiden Loan "current".

135. However, MVR had in fact made the timely monthly payments to Kaiden for April and May, 2022.

136. By letter dated May 19, 2022, Plaintiffs provided Kaiden, through his Servicing Agent, with proof the April and May, 2022 monthly payments had been made.

137. On May 23, 2022, Plaintiffs' counsel contacted Kaiden's Servicing Agent to inquire about the Kaiden Notice of Default.

138. Kaiden's Servicing Agent never disclosed that: (i) the Kaiden Note was in default as a result of the recording of the Michaels Second Mortgage; or (ii) Kaiden had elected to accelerate the Kaiden Note and impose default interest.

139. On May 31, 2022, Plaintiffs' counsel contacted Devico to inquire about the Kaiden Notice of Default.

140. Devico never disclosed that: (i) the Kaiden Note was in default as a result of the recording of the Michaels Second Mortgage; or (ii) Kaiden had elected to accelerate the Kaiden Note and impose default interest.

141. To the contrary, Devico acknowledged that the April and May monthly payments had been made, and instructed Plaintiffs' counsel to make the June 2022 payment made in the same manner.

139575916.1                                    17

142.    Plaintiffs, through counsel, reasonably relied upon the statements and omissions of Kaiden, through his Servicing Agent and Devico, and believed that all monthly payments had been made to date, and the Kaiden Note remained current.

143.    Despite having actual knowledge of the Michaels Second Mortgage, and despite prior email and verbal correspondence with Plaintiffs' counsel, Kaiden never notified Plaintiffs in the Kaiden Notice of Default or in any other manner that he considered the recording of the Michaels Second Mortgage a default under the Kaiden Note, or that he had elected to accelerate the amount due under the Kaiden Note.

144.    While Kaiden claims he had no obligation to provide any <u>notice</u> of default or acceleration to Plaintiffs, to the extent he and his agents, employees, and representatives chose to communicate, as they did here, they had a duty to refrain from misrepresenting and/or omitting material facts to / from Plaintiffs.

145.    As set forth above, Kaiden, Park I, Park II, and Devico misrepresented to Plaintiffs and / or omitted from Plaintiffs, material facts regarding the status of the Kaiden Note.

146.    Upon information and belief, Kaiden, Park I, Park II, and Devico misrepresented to Plaintiffs and / or omitted from Plaintiffs, material facts regarding the status of the Kaiden Note the intent to deceive Plaintiffs.

147.    Plaintiffs reasonably and detrimentally relied upon the statements / omissions of Kaiden, Park I, Park II, and Devico in believing the Kaiden Note was current through June 2022 and, as a result, sustained damages.

148.    Kaiden, Park I, Park II, and Devico's conduct was intentional and malicious, and they are therefore liable to Plaintiffs for punitive damages.

139575916.1                                              18

**WHEREFORE**, Plaintiffs demand judgment against Kaiden, Park I, Park II, and Devico for damages; punitive damages; attorneys' fees and costs; and such other and further relief as the Court shall deem just and equitable.

## COUNT FOUR

### (Negligent Misrepresentation)

149. Plaintiffs repeat and incorporate each and every allegation contained herein as if more fully set forth at length.

150. Kaiden, Park I, Park II, and Devico negligently or carelessly made, or permitted, or participated in the making of, misrepresentations of material facts to Plaintiffs as set forth in this Complaint.

151. Kaiden, Park I, Park II, and Devico negligently or carelessly made, or permitted, or participated in the omission of material facts from Plaintiffs as set forth in this Complaint.

152. Kaiden, Park I, Park II, and Devico knew, or should have known, that Plaintiffs would rely upon the accuracy and truth of the representations of material facts.

153. Kaiden, Park I, Park II, and Devico knew, or should have known, that Plaintiffs would rely upon the omission of material facts from Plaintiffs as set forth above in this Complaint.

154. As a direct, proximate and reasonably foreseeable result of the misrepresentations of material fact published by Kaiden, Park I, Park II, and Devico, Plaintiffs have suffered and continue to suffer damages.

155. As a direct, proximate and reasonably foreseeable result of the omission of material facts by Kaiden, Park I, Park II, and Devico, Plaintiffs have suffered and continue to suffer damages.

139575916.1                                        19

**WHEREFORE**, Plaintiffs demand judgment against Kaiden, Park I, Park II, and Devico for damages; attorneys' fees and costs; and such other and further relief as the Court shall deem just and equitable.

## COUNT FIVE

### (Negligence)

156.    Plaintiffs repeat and incorporate each and every allegation contained herein as if more fully set forth at length.

157.    At all times relevant herein, Trinity and Nixon had knowledge and information of the Michaels Note.

158.    Plaintiffs retained Trinity and Nixon as brokers to procure financing for the Purchase of the Property.

159.    Plaintiffs relied on Defendants' expertise and industry knowledge to advise them on the suitability of the Kaiden Note in light of the facts and circumstances that existed at the time, including the terms and provisions of the Michaels Note.

160.    Plaintiffs relied on the representations by Nixon that Kaiden had knowledge of and accepted all the terms and provisions of the Michaels Note.

161.    At all times relevant herein, Nixon was acting in his dual capacities as officer, employee, agent, representative and/or member of Trinity.

162.    Nixon committed the wrongful acts alleged herein while acting in his dual capacities as officers, employee, agent, representative and/or member of Trinity.

163.    The wrongful acts of Nixon benefited Trinity.

139575916.1

20

164.    Trinity and Nixon breached the duty of care owed to Plaintiffs by placing Plaintiffs with the Kaiden Note, which was incompatible with and violative of Plaintiffs' obligations and duties under the Michaels Note.

165.    Trinity and Nixon's negligence was a substantial contributing factor causing Plaintiffs to sustain damages.

**WHEREFORE**, Plaintiffs demand judgment against Trinity and Nixon, jointly and severally, for damages; punitive damages; attorneys' fees and costs; and such other and further relief as the Court shall deem just and equitable.

## COUNT SIX

### (Negligence – John Doe Lawyer)

166.    Plaintiffs repeat and incorporate each and every allegation contained herein as if more fully set forth at length.

167.    Trinity and Nixon retained John Doe Lawyer on behalf of Plaintiffs to review the transaction with Kaiden and provide an Opinion Letter on behalf of Plaintiffs.

168.    Trinity and Nixon retained John Doe Lawyer, with Kaiden's knowledge and consent, and used part of the Kaiden Loan proceeds to pay John Doe Lawyer.

169.    Upon information and belief, John Doe Lawyer reviewed all the transaction documents, including the Michaels Note.

170.    Upon information and belief, John Doe Lawyer provided the Opinion Letter as counsel for and on behalf of Plaintiffs.

171.    In preparing the Opinion Letter on Plaintiffs' behalf, John Doe Lawyer owed Plaintiffs a duty of care to investigate and advise Plaintiffs whether performance of their obligations and duties under the Michaels Note would result in a default under the Kaiden Note.

139575916.1                                              21

172.     John Doe Lawyer breached the duty of care owed to Plaintiffs by failing to properly investigate and advise Plaintiffs whether performance of their obligations and duties under the Michaels Note would result in a default under the Kaiden Note.

173.     John Doe Lawyer's breach of the duty of care was a substantial contributing factor causing Plaintiffs damages.

**WHEREFORE**, Plaintiffs demand judgment against John Doe Lawyer for damages; attorneys' fees and costs; and such other and further relief as the Court shall deem just and equitable.

## COUNT SEVEN

### (Tortious Interference)

174.     Plaintiffs repeat and incorporate each and every allegation contained herein as if more fully set forth at length.

175.     Plaintiffs had a reasonable expectation of economic advantage in ensuring the Kaiden Note remained current and did not go into default.

176.     Upon information and belief, Michaels conspired with Kaiden to use the recording of the Michaels Second Mortgage as a false pretense to induce Kaiden to declare a default under the Kaiden Note.

177.     Michaels' goal was to induce Kaiden to declare a default, trigger onerous default interest, and force Plaintiffs to immediately sell the Property.

178.      Michaels acted with malice, without legal justification, intentionally interfered with Plaintiffs' loan with Kaiden.

179.     As a direct and proximate result of the tortious interference by Michaels, Plaintiffs have sustained damages.

139575916.1                                    22

**WHEREFORE**, Plaintiffs demand judgment against Michaels for damages; punitive damages; attorneys' fees and costs; and such other and further relief as the Court shall deem just and equitable.

## COUNT EIGHT

### (Declaratory Judgment)

180.    Plaintiffs repeat and incorporate each and every allegation contained herein as if more fully set forth at length.

181.    Kaiden was aware of the Michaels Note at the time he made the loan to Plaintiffs.

182.    The Michaels Second Mortgage was not a "further encumbrance" of the Property as the Michaels Note was disclosed to Kaiden, executed before the Kaiden Note, and Kaiden was well-aware of and consented to the Michaels Note, and never objected to it prior to the transaction with Plaintiffs.

183.    Kaiden was aware of the recording of the Michaels Second Mortgage in early May 2022.

184.    In the Kaiden Notice of Default, Kaiden wrongfully declared Plaintiffs in default for allegedly failing to make the April and May monthly payments under the Kaiden Note.

185.    When he issued the Kaiden Notice of Default, Kaiden was aware of the recording of the Michaels Second Mortgage.

186.    In the Kaiden Notice of Default, Kaiden confirmed that the only amounts due as of the date of the letter were the allegedly missed monthly payments for April and May, along with default interest for those two months.

187.    In the Kaiden Notice of Default, Kaiden confirmed that payment of the April and May monthly payments would bring the Kaiden Note current.

188.    Despite having actual knowledge of the Michaels Second Mortgage, Kaiden never notified Plaintiffs in the Kaiden Notice of Default that he considered the recording of the Michaels Second Mortgage a default under the Kaiden Note, or that he was electing to accelerated the loan.

189.    On May 23, 2022, Plaintiffs' counsel contacted Kaiden's Servicing Agent to inquire about the Kaiden Notice of Default.

190.    Kaiden's Servicing Agent never disclosed that: (i) the Kaiden Note was in default as a result of the recording of the Michaels Second Mortgage; or (ii) Kaiden had elected to accelerate the Kaiden Note and impose default interest.

191.    On May 31, 2022, Plaintiffs' counsel contacted Devico to inquire about the Kaiden Notice of Default.

192.    Devico never disclosed that: (i) the Kaiden Note was in default as a result of the recording of the Michaels Second Mortgage; or (ii) Kaiden had elected to accelerate the Kaiden Note and impose default interest.

193.    To the contrary, Devico acknowledged that the April and May monthly payments had been made, and instructed Plaintiffs' counsel to make the June 2022 monthly payment in the same manner.

194.    Despite Kaiden's agents and/or employees having email and telephone communications with Plaintiffs' counsel in May 2022, Kaiden never notified Plaintiffs of his position that the recording of the Michaels Second Mortgage was a default under the Kaiden Note, or that he elected to accelerate the loan and impose default interest.

139575916.1                                        24

195.    Kaiden now claims that the Kaiden Loan was accelerated on April 1, 2022, and has forced Plaintiffs to pay the onerous default interest from that date in order to clear title to the Property.

196.    The Kaiden Note is governed by and construed under the laws of the State of New York.

197.    Under New York law, where the acceleration of the maturity of a mortgage debt on default is made optional with the holder of the note and mortgage (as it was here), some affirmative action must be taken evidencing the holder's election to take advantage of the accelerating provision, and until such action has been taken the provision has no operation. Wells Fargo Bank, N.A. v Burke, 94 A.D.3d 980, 982-83 (2012).

198.    Under New York law, the borrower must be provided with some notice of the holder's decision to exercise the option to accelerate the maturity of a loan, and such notice must be "clear and unequivocal."   Burke, 94 A.D.3d at 983.

199.    The Foreclosure Action was the first affirmative action taken evidencing Kaiden / Park I / Park II's election to take advantage of the accelerating provision in the Kaiden Note.

200.    Plaintiffs were not served with the Foreclosure Action until September 8, 2022.

201.    An actual and justiciable controversy exists concerning the respective rights, duties and obligations of the parties with respect to the Kaiden Note, which is subject to resolution.

**WHEREFORE**, Plaintiffs request Judgment against Kaiden, Park I, and Park II declaring the following:

A.    That the recording of the Michaels Second Mortgage was not a default under the Kaiden Note;

139575916.1                                                  25

B.      That if the recording of the Michaels Second Mortgage was a default under the Kaiden Note, then Kaiden did not elect to accelerate the Kaiden Note until the filing of the Foreclosure Action;

C.      That if the recording of the Michaels Second Mortgage was a default under the Kaiden Note, then Kaiden did not provide notice of the decision to exercise the option to accelerate the maturity of the Kaiden Note until Plaintiffs were served with the Foreclosure Action; and

D.      Plaintiffs are entitled to reimbursement of their attorneys' fees and costs; and such other and further relief as the Court shall deem just and equitable.

## COUNT NINE

**(Breach Of Implied Covenant Of Good Faith & Fair Dealing – Kaiden / Park I / Park II)**

202.    Plaintiffs repeat and incorporate each and every allegation contained herein as if more fully set forth at length.

203.    The Kaiden Note contained an implied covenant of good faith and fair dealing.

204.    The covenant permits the inclusion of terms and conditions which have not been expressly set forth in the written contract.

205.    The covenant acts in such instances to include terms the parties must have intended because they are necessary to give business efficacy to the contract.

206.    The covenant has been utilized to allow redress for the bad-faith performance of an agreement even when the defendant has not breached any express term.

207.    The covenant has been held to permit inquiry into a party's exercise of discretion expressly granted by a contract's terms.

139575916.1                                          26

208.     Good faith means faithfulness to the scope, purpose and terms of the parties' contract, and that fair dealing means to deal fairly in the sense of consistently with the terms of the parties' agreement and its purpose.

209.     Kaiden / Park I / Park II breached the implied covenant of good faith and fair dealing by: (i) wrongfully declaring Plaintiffs in default for allegedly failing to make monthly payments; (ii) concealing from Plaintiffs that Kaiden had elected to accelerate the Kaiden Note on April 1, 2022 and elected to impose default interest when issuing the Kaiden Notice of Default and communicating with Plaintiffs' counsel in May 2022; and (iii) forcing Plaintiffs to pay onerous default interest of 25% from April 1, 2022 in order to clear title to transfer the Property.

210.     As a direct and proximate result of the aforesaid breaches of the implied covenant of good faith and fair dealing, Plaintiffs have suffered significant damages.

**WHEREFORE**, Plaintiffs demand judgment against Kaiden, Park I, and Park II, jointly and severally, for damages, punitive damages, attorneys' fees and costs, and such other and further relief as the Court deems just and equitable.

## COUNT TEN

### (Breach of the Implied Covenant of Good Faith and Fair Dealing - Michaels)

211.     Plaintiffs repeat and incorporate each and every allegation contained herein as if more fully set forth at length.

212.     The Michaels Note contained an implied covenant of good faith and fair dealing.

213.     Michael breached the implied covenant of good faith and fair dealing by conspiring with and inducing Kaiden to wrongly declare the Kaiden Note in default and trigger

139575916.1                                    27

the imposition of onerous default interest to unjustly pressure Plaintiffs to sell the Property at a loss.

214. As a direct and proximate result of the aforesaid breaches of the implied covenant of good faith and fair dealing, Plaintiffs have suffered significant damages.

**WHEREFORE**, Plaintiffs demand judgment against Michaels for damages, punitive damages, attorneys' fees and costs, and such other and further relief as the Court deems just and equitable

## COUNT ELEVEN

### (Civil Conspiracy)

215. Plaintiffs repeat and incorporate each and every allegation contained herein as if more fully set forth at length.

216. Upon information and belief, Defendants, Kaiden, Park I, Park II, Devico and Michaels, entered into an agreement or confederation with a common purpose to trigger a false default under the Kaiden Note and breach of contract.

217. Defendants, Kaiden, Park I, Park II, Devico and Michaels, stood to benefit from the scheme: Kaiden, Park I, Park II, Devico could putatively charge an onerous default rate of interest at 25%, and Michaels believed the imposition of the onerous default interest rate would force the Minutos to sell the Property quicker, resulting in a quicker payoff of her loan and interest.

218. As a direct and proximate result of the Defendants' conspiracy, Plaintiffs suffered significant damages.

219. Defendants, Kaiden, Park I, Park II, Devico and Michaels, are therefore equally, jointly, severally and vicariously liable to Plaintiffs.

139575916.1                                                     28

**WHEREFORE**, Plaintiffs demand judgment against Defendants, Kaiden, Park I, Park II, Devico and Michaels, jointly and severally, for damages, punitive damages, attorneys' fees and costs, and such other and further relief as the Court deems just and equitable.

## COUNT TWELVE

### (Breach of Fiduciary Duty)

220.    Plaintiffs repeat and incorporate each and every allegation contained herein as if more fully set forth at length.

221.    Defendants, Mudrik and The Agency, are licensed real estate agents.

222.    At all times relevant, Mudrik was acting on behalf of The Agency as its agent, servant, representative and/or employee.

223.    Plaintiffs retained Mudrik and The Agency to act as their real estate agent to broker the sale of the Property.

224.    Mudrik and The Agency agreed to serve as Plaintiffs' real estate agent for the sale of the Property at a reduced commission.

225.    As a real estate agent for Plaintiffs, Mudrik and The Agency owed Plaintiffs a fiduciary duty of loyalty and care to act in the best interests of the Plaintiffs, including, but not limited to, dealing honestly and fairly; loyalty; confidentiality; obedience; full disclosure; accounting for all funds; skill, care and diligence in the transaction; and presenting all offers and counteroffers in a timely manner.

226.    Despite specific instruction to the contrary, Mudrik disclosed confidential information regarding the status of the sale of the Property to Michaels and/or her representatives and agents.

227.   Mudrik presented Plaintiffs with a ready, willing, and able buyer for the purchase of the Property for $5.6 million.

228.   Upon information and belief, Mudrik and/or The Agency also had a second buyer ready, willing, and able to pay approximately $6.5 million for the Property.

229.   Mudrik and The Agency did not disclose to Plaintiffs the existence of the second buyer who was ready, willing, and able to pay approximately $6.5 million.

230.   Instead, Mudrik and The Agency kept the second buyer secret, and Plaintiffs entered into a contract with the first buyer.

231.   Mudrik and The Agency then arranged for a "second sale" of the Property, through an assignment from the first buyer to the second buyer, for $6.5 million.

232.   Mudrik and The Agency did this in order to earn a greater commission from the second sale than if they had presented the second buyer to Plaintiffs.

233.   In failing to disclose the second buyer and higher offer to Plaintiffs, Mudrik and The Agency breached the fiduciary duty of loyalty and care to Plaintiffs, and acted for their own self-interest.

234.   As a proximate cause of Mudrik and The Agency's breach of fiduciary duty of loyalty and care, Plaintiffs have sustained damages.

**WHEREFORE**, Plaintiffs demand judgment against Defendant, Mudrik and The Agency, jointly and severally, for damages, punitive damages, attorneys' fees and costs, and such other and further relief as the Court deems just and equitable.

139575916.1

30

## COUNT THIRTEEN

### (Breach of Contract)

235.    Plaintiffs repeat and incorporate each and every allegation contained herein as if more fully set forth at length.

236.    Under the Michaels Note, the Minutos agreed to pay Michaels the sum of $875,000 within 45 days.

237.    In the event the Minutos did not pay Michaels the $875,000 within 45 days, the parties agreed that the sole default remedy would be Minutos granting Michaels a mortgage on the Property securing payment of no more than $875,000.

238.    The Minutos complied with the Michaels Note and executed the Michaels Second Mortgage securing payment of $875,000.

239.    Under the Michaels Note, Michaels was entitled to a maximum payment of no more than $875,000.

240.    However, Michaels refused to discharge the Michaels Second Mortgage so that Plaintiffs could transfer clear title to the Property unless and until Michaels received payment of $897,564.08.

241.    In order to clear title to transfer the Property, so as to mitigate damages as a result of the Defendants' wrongful conduct as stated within this Complaint, Plaintiffs were forced to pay Michaels $897,564.08.

242.    By demanding payment in excess of $875,000, Michaels breached the terms of the Michaels Note.

243.    As a result of the breach of the Michaels Note, Plaintiffs have been damaged.

139575916.1                                              31

**WHEREFORE**, Plaintiffs demand judgment against Defendant, Michaels, for damages, punitive damages, attorneys' fees and costs, and such other and further relief as the Court deems just and equitable.

<u>**DESIGNATION OF TRIAL ATTORNEY**</u>

Pursuant to <u>R.</u> 4:25-4, Plaintiffs hereby designate Barry J. Muller, Esquire as their trial attorney in this matter.

<u>**DEMAND FOR TRIAL BY JURY**</u>

Plaintiffs hereby demand a trial by jury as to those issues so triable.

<u>**CERTIFICATION PURSUANT TO *RULE* 4:5-1**</u>

Plaintiffs, by their undersigned counsel, hereby certify that the matters in controversy in this case are not, to the best of their knowledge and belief, the subject of any other action pending in any court or of a pending arbitration proceeding, nor is any such other action or arbitration proceeding contemplated. Plaintiffs further certify that they presently have no knowledge of the names of other parties who should be but have not been joined in this action.

**FOX ROTHSCHILD LLP**
Attorneys for Plaintiffs,
**Debra S. Minuto & MV Realty Group LLC**

By: _____
BARRY J. MULLER

Dated:  November 2, 2022

# Civil Case Information Statement

## Case Details: BERGEN | Civil Part Docket# L-005920-22

**Case Caption:** DEBRA MINUTO  VS KAIDEN JONATHAN

**Case Initiation Date:** 11/02/2022

**Attorney Name:** BARRY JOSEPH MULLER

**Firm Name:** FOX ROTHSCHILD LLP

**Address:** PRINCETON PIKE CORPORATE CTR 997 LENOX DR LAWRENCEVILLE NJ 086482311

**Phone:** 6098963600

**Name of Party:** PLAINTIFF : Debra, Minuto

**Name of Defendant's Primary Insurance Company** (if known): Unknown

**Case Type:** TORT-OTHER

**Document Type:** Complaint with Jury Demand

**Jury Demand:** YES - 6 JURORS

**Is this a professional malpractice case?**  NO

**Related cases pending:** NO

**If yes, list docket numbers:**

**Do you anticipate adding any parties (arising out of same transaction or occurrence)?** NO

**Does this case involve claims related to COVID-19? NO**

**Are sexual abuse claims alleged by: Minuto Debra? NO**

**Are sexual abuse claims alleged by: MV Realty Group LLC ? NO**

---

### THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE
#### CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** YES

**If yes, is that relationship:** Business

**Does the statute governing this case provide for payment of fees by the losing party?** NO

**Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition:**


**Do you or your client need any disability accommodations?** NO
        **If yes, please identify the requested accommodation:**


**Will an interpreter be needed?** NO
        **If yes, for what language:**


**Please check off each applicable category: Putative Class Action?** NO  **Title 59?** NO  **Consumer Fraud?** YES

---

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

11/02/2022
Dated

/s/ BARRY JOSEPH MULLER
Signed

MATTHEW EYET – Attorney ID: 018872010
**EYET LAW LLC**
382 George Street
New Brunswick, NJ 08901
Phone: (732) 379-8617
Fax: (908) 292-1108
Email: meyet@eyetlaw.com
*Attorneys for Defendant*
*Yonel Devico*

|  |  |
|---|---|
| DEBRA S. MINUTO and MV REALTY GROUP LLC,<br><br>Plaintiffs,<br><br>v.<br><br>JONATHAN KAIDEN; PARK LENDING, LLC; PARK LENDING II LLC; YONEL DEVICO; TRINITY FINANCIAL ENTERPRISES, LLC d/b/a TRINITY MORTGAGE, LLC; TRINITY NIXON; JOHN DOE LAWYER (a fictitious attorney whose identity is not yet known), JILLIAN MICHAELS, MIKHAIL MUDRIK, and THE AGENCY FLORIDA, LLC,<br><br>Defendants. | SUPERIOR COURT OF NEW JERSEY BERGEN COUNTY LAW DIVISION<br><br>Docket No. BER-L-005920-22<br><br><u>Civil Action</u><br><br>**ACCEPTANCE OF SERVICE AND NOTICE OF APPEARANCE** |

Matthew T. Eyet, Esq., of the firm of Eyet Law LLC, does hereby accept service of the Complaint filed in this action through the E-Courts electronic filing system on behalf of Defendant Yonel Devico in the above captioned matter as of March 28, 2023; and further enters his appearance on behalf of Defendant Yonel Devico.

Please see that all notices and documents are forwarded to Matthew T. Eyet, Esq. regarding this case.

Dated: March 28, 2023                         By: _____
                                                                    Matthew T. Eyet, Esq.

EYET LAW LLC
*Attorneys for Defendant*
*Yonel Devico*
382 George Street
New Brunswick, NJ 08901
Phone: (732) 379-8617
Fax: (908) 292-1108
meyet@eyetlaw.com